UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

---

| | |
|---|---|
| Robert Vozzella, Personal Representative )<br>of the Estate of Judith Vozzella, and )<br>Robert Vozzella, in his individual )<br>Capacity )<br>  )<br>Plaintiff )<br>  )<br>v. )<br>  )<br>HCA Health Services of New Hampshire, Inc., )<br>d/b/a Portsmouth Regional Hospital, )<br>George K. Looser, II, P.A., )<br>Mark C. Sullivan, P.A., Coastal Cardiothoracic )<br>& Vascular Associates, and )<br>Appledore Medical Group, Inc. )<br>  )<br>Defendants )<br>_____ ) | JURY TRIAL DEMANDED |

## COMPLAINT

The Plaintiffs bring this action for medical injury and wrongful death pursuant to RSA 507-E and RSA 556:12 against Defendants.

## PARTIES

1. At all relevant times the Plaintiff, Robert Vozzella, was a citizen of the State of Maine, residing at 403 Goodwin Road, Eliot, ME 03903, and is the personal representative of the Estate of Judith Vozzella, having been duly appointed by the York County Probate Court on January 15, 2010.

2. Judith Vozzella resided at 403 Goodwin Road, Eliot, ME 03903, prior to her death and was a domiciliary of the State of Maine. Mrs. Vozzella's date of birth was December 15, 1948.

3. The Plaintiff, Robert Vozzella, is a resident of the State of Maine and lives at 403 Goodwin Road, Eliot, ME 03903. He is surviving husband of Judith Vozzella, having been married to her on May 19, 1973.

4. The Defendant, HCA Health Services of New Hampshire, Inc. d/b/a Portsmouth Regional Hospital is a private corporation that is incorporated in the State of New Hampshire which does business as Portsmouth Regional Hospital, a hospital located at 333 Borthwick Avenue in Portsmouth, New Hampshire, (hereinafter "Portsmouth Regional Hospital").

5. At all times relevant herein, Portsmouth Regional Hospital acted by and through its administrators, officers, employees, staff, agents and ostensible agents for the purpose of operating its business as a hospital, medical center and health care provider and is therefore liable for the negligent acts and misconduct of said administrators, officers, employees, staff, agents and ostensible agents under the legal doctrine of vicarious liability.

6. At all times relevant herein, Portsmouth Regional Hospital extended privileges to health care providers based on a credentialing process and held itself out to members of the general public including Mr. and Mrs. Vozzella as a provider of competent medical care and other health care services in this facility in accordance with the accepted standard of care amongst similar health care providers and as such owed duties to the Vozzellas including but not limited to its duty to: a) protect the members of the general public from foreseeable injury by practicing within the standard of care; b) provide the timely examination, test, and diagnosis of any and all medical conditions reasonably expected or discovered; c) provide appropriate treatment and care of the patient ; and d) provide any other medical services that a reasonably prudent and competent health care provider would administer under the same or similar circumstances.

7. The Defendant, Mark C. Sullivan, is a physician's assistant licensed to practice in the State of New Hampshire.

8. At all times relevant herein, PA Sullivan is believed to have been either employed by, credentialed by, or otherwise associated with Portsmouth Regional Hospital with privileges to practice medicine at Portsmouth Regional Hospital.  As such PA Sullivan held himself out to the members of the general public including Judith Vozzella as a provider of competent medical care and other health care services in accordance with the accepted standard of care amongst similar health care providers; PA Sullivan owed Judith Vozzella duties including but not limited to a duty to: a) protect the members of the general public from foreseeable injury by practicing within the standard of care; b) provide the timely examination, test, and diagnosis of any and all medical conditions reasonably expected or discovered; c) provide appropriate treatment and care of the patient ;

and d) provide any other medical services that a reasonably prudent and competent health care provider would administer under the same or similar circumstances.

9. Defendant, Appledore Medical Group, Inc.(hereinafter Appledore) is a corporation registered in New Hampshire with a principal place of business at One Park Plaza, Nashville, TN and operating in New Hampshire at 333 Borthwick Avenue in Portsmouth, New Hampshire, County of Rockingham with a registered agent identified as CT Corporation, 9 Capitol Street, Concord, NH 03301.

10. At all times relevant herein, Appledore is alleged to be the employer of Defendant Sullivan.  Defendant Appledore acted by and through its administrators, officers, employees, staff, agents and ostensible agents for the purpose of operating its business as a medical center and health care provider and is therefore liable for the negligent acts and misconduct of said administrators, officers, employees, staff, agents and ostensible agents under the legal doctrine of vicarious liability.

11. The Defendant, George K. Looser, II, is a physician's assistant licensed to practice in the State of New Hampshire

12. At all times relevant herein, PA Looser is believed to have been either employed by, credentialed by, or otherwise associated with Portsmouth Regional Hospital with privileges to practice medicine at Portsmouth Regional Hospital.  As such PA Looser held himself out to the members of the general public including Judith Vozzella as a provider of competent medical care and other health care services in accordance with the accepted standard of care amongst similar health care providers; PA Looser owed Judith Vozzella duties including but not limited to a duty to: a) protect the members of the general public from foreseeable injury by practicing within the standard of care; b) provide the timely examination, test, and diagnosis of any and all medical conditions reasonably expected or discovered; c) provide appropriate treatment and care of the patient ; and d) provide any other medical services that a reasonably prudent and competent health care provider would administer under the same or similar circumstances.

13. Defendant, Coastal Cardiothoracic and Vascular Associates (hereinafter, Coastal)  is a New Hampshire business entity with a principal place of business at 333 Borthwick Avenue in Portsmouth, New Hampshire, County of Rockingham.

14. At all times relevant herein, Coastal Cardiothoracic and Vascular Associates is alleged to be the employer of Defendant Looser. Defendant Coastal acted through its administrators, officers, employees, staff, agents and ostensible agents for the purpose of operating its business as medical center and health care provider and is therefore liable for the negligent acts and misconduct of said administrators, officers, employees, staff, agents and ostensible agents under the legal doctrine of vicarious liability.

## JURISDICTION & VENUE

15. This court has jurisdiction over the parties and the causes of action alleged herein pursuant to 28 USC §1332 due to the diversity of the citizenship of the parties and the amount in controversy which exceeds $75,000.

16. Venue lies in this District pursuant to 28 U.S.C. § 1391 because the claims arose in the District of New Hampshire.

## FACTS

17. Robert Vozzella was married to Judith Vozzella (Judith) who died on June 19, 2009 at age 60.

18. On April 12, 2009 Judith was admitted to the York County Hospital in York, Maine with nausea, vomiting and diarrhea.

19. On April 20, 2009 Judith was transferred to the Portsmouth Regional Hospital in Portsmouth, New Hampshire, with a diagnosis of stroke, i.e., left sided cerebrovascular accident, ("CVA") and myocardial infarction due to septic emboli caused by mitral valve endocarditis with an emergent need for surgical mitral valve replacement.

20. On April 21, 2009 Dr. Donato Sisto performed mitral valve replacement surgery on Judith, completed at 15:06, and was assisted by Defendant, Mark Sullivan, PA-C.

21. Because of Judith's severe peripheral vascular disease Dr. Sisto placed an aortic arterial line through an innominate artery to provide blood pressure readings.

22. Because of the aortic arterial line, immediately after the surgery, Dr. Sisto ordered that Judith was not to be turned as indicated by the April 21, 2009 Physician's Order entry, signed by Defendant Mark Sullivan, PA which states: "Do not turn patient due to innominate arterial line."

23. On April 21, 2009, following surgery, Judith was transferred in the operating room from a table onto a stretcher and was then taken to the Intensive Care Unit of the Portsmouth Regional Hospital.

24. From April 21, 2009 until April 24, 2009, Judith remained supine and immobile on the stretcher, sedated and unable to advocate for herself.

25. None of her care providers planned for or took any appropriate preventative steps during the immediate post-operative patient transfer or subsequently thereafter to transfer her to a specialty bed and mattress or to otherwise address the potential and likely development of decubitus ulcers, nor did they communicate such risks to her surgeon.

26. For the first time, on April 24, 2009, though the aortic arterial line was still present, Judith was transferred from the stretcher to a sport/rotating bed.

27. Although the records are devoid of details, on April 24, 2009 a massive hospital-acquired Stage IV bilateral decubitus ulcer of the buttocks was discovered on Judith's backside.

28. On April 24, 2009 a non-aggressive, incomplete plan of care was ordered.

29. At that same time and place, on Friday, April 24, 2009, Defendant Looser asked for a wound care consultant, E. Gauthrer, R.N.,in the nursing department at Portsmouth Regional Hospital to examine Judith to address the worsening ulcers.

30. Despite the extreme risk of a deadly progressive decubitus ulcer, Gauthrer, who had already left for the weekend, indicated that she would see Judith another three days later on Monday, April 27, 2009.

31. Also despite the extreme risk of a deadly progressive decubitus ulcer Defendants Looser and Sullivan failed to take any additional steps to insure a timely wound and surgical consult or the administration of appropriate treatment.

32. Also on April 24, 2009, despite still having the aortic arterial line in place, physicians indicated that Judith could be turned per protocols for appropriate management.

33. During the three days from April 21, 2009 to April 24, 2009, nurses and caretakers, including Defendants Sullivan and Looser, failed to take any

appropriate steps to prevent Judith from developing decubitus ulcers and in fact did not have any appropriate preventative wound care plan in place.

34. During the additional three days from April 24, 2009 when the ulcers were discovered to April 27, 2009, the nurses and caregivers took only insufficient and non-aggressive steps to address the progressive worsening ulcers.

35. Portsmouth Regional Hospital Department of Nursing failed to protect Judith Vozzella from the worst possible outcome by not providing preventative measures for skin breakdown as required by the standard of care for three consecutive days.

36. As indicated by the complete absence of appropriate supporting documentation the Nursing Department failed to discuss or pursue an alternative plan of care for the prevention of the development of pressure ulcers relating to a sedated post-operative immobile patient with a clinical history of global vascular disease, insulin-dependent Diabetes Mellitus Type II, and a left sided CVA.

37. Although Judith was identified as incontinent of stool from admission, no rectal tube was used to prevent contamination until April 24, 2009.

38. Furthermore, though a rectal tube was used beginning April 24, 2009, the Nursing Department and other medical caretakers at the hospital failed to appropriately secure the tube, which fell out at least three times, resulting in fecal contamination of the ulcer.

39. On April 28, 2009, a general surgery consult was ordered and surgery was performed on April 29, 2009, five days subsequent to the discovery of the hospital-acquired decubitus ulcers.

40. The first debridement of the unstageable decubitus ulcer was attempted on April 30, 2009 and it revealed; necrotic skin and muscle of the buttocks bilaterally; necrotic subcutaneous tissue and muscle with extensive soft tissue loss; a complete loss of the medial gluteal muscle down to the bone, secondary to the necrosis; and extensive exposure of the sacrum.

41. On April 20, 2009, at the time of the transfer to Portsmouth Regional Hospital, Judith was known to be an extremely high-risk patient for the development of pressure ulcers with an abnormally low albumin level pre-operatively and a history of a recent previous myocardial infarction

and CVA, global peripheral vascular disease and Type II insulin-dependent diabetes.

42. On admission to Portsmouth Regional Hospital Judith's skin was bilaterally intact on her backside and buttocks.

43. Wound care intervention to prevent and treat the hospital-acquired decubitus ulcer was not coordinated and not begun until six days after admission and three days following discovery of the ulcer.

44. On May 29, 2009 additional hospital acquired decubitis ulcers with necrosis were noted on Judith Vozzella's heal, head and posterior scalp.

45. As evidenced by the absence of documentation Nursing personnel and other medical caretakers failed to take preventative measures for further skin breakdown specific to these areas.

46. After approximately two months of unremitting pain and suffering from the decubitus ulcers, Judith died due to complications from the ulcers.

## COUNT I – MEDICAL MALPRACTICE/WRONGFUL DEATH

47. Plaintiff repeats and realleges every allegation in paragraphs 1-46 as though fully set forth herein.

48. All Judith's caretakers at Portsmouth Regional Hospital and the Portsmouth Regional Hospital breached the standard of care by failing in their duty to protect Judith from injury and death by allowing her complete immobilization with the omission of a plan of care for the prevention of the development of decubitus ulcers specific to the immobilized sedated post-operative patient.

49. Immobilization in this critical clinical setting created a known risk of developing skin breakdown and ultimately was the cause of the hospital-acquired decubitus ulcer.

50. There is an absence of documentation covering the three-day post-operative period justifying the arterial line compared with the likely problem of skin breakdown.

51. As evidenced by the absence of documentation, neither Judith Vozzella nor her family were informed of the risks associated with immobilization in a clinical setting of severe peripheral vascular disease.

52. Given the severe nature of Judith Vozzella's vasculopathy and the duration of her immobilization Defendants knew or should have known that a hospital-acquired serious skin breakdown would occur.

53. Defendants further breached the standard of care by delaying appropriate treatment of the decubitus ulcer once discovered and by failing to appropriately treat the decubitus ulcer once discovered.

54. The professional negligence by the Defendants is a deviation from the applicable standard of care of health care practitioners in the area to provide reasonable care and safe treatment to Judith for her medical problems.

55. As a direct and proximate result of the Defendants' negligent acts and omissions, Judith Vozzella developed an unstageable hospital-acquired decubitus ulcer of the buttocks bilaterally which contributed to and directly led to her progressive clinical decline, physically, mentally, spiritually emotionally, and ultimately her untimely death.

56. As the direct, proximate and foreseeable result of the negligence and breach of the standard of care aforesaid, Judith Vozzella sustained severe damages, endured unremitting pain and suffering, underwent relentless painful surgical procedures and invasive interventions, incurred substantial medical bills for treatment and died on June 19, 2009.

57. Wherefore, the Plaintiff's Estate claims damages for the mental and physical pain suffered by her in consequence of the injury, the reasonable expenses occasioned to her estate by the injury, the shortened duration of her life and the resulting loss of enjoyment of life caused by the injury, and all other elements of damages that may be recovered under RSA 556:12.

## COUNT II – MEDICAL MALPRACTICE/WRONGFUL DEATH
## MARK C. SULLIVAN, PA

58. Plaintiff repeats and realleges every allegation in paragraphs 1-57 as though fully set forth herein.

59. As set forth above, Defendant Sullivan breached the standard of care by failing to protect Judith Vozzella from injury and death by allowing her complete immobilization with the omission of a plan of care for the prevention of the development of decubitus ulcers specific to the

immobilized sedated post-operative patient.

60. Immobilization in this critical clinical setting created known risk of developing skin breakdown and ultimately was the cause of the hospital-acquired decubitus ulcer.

61. There is an absence of documentation covering the three-day post-operative period justifying the arterial line compared with the likely problem of skin breakdown.

62. As evidenced by the absence of documentation, neither Judith Vozzella nor her family were informed of the risks associated with immobilization in a clinical setting of severe peripheral vascular disease.

63. Given the severe nature of Judith Vozzella's vasculopathy and the duration of her immobilization Defendant Sullivan knew or should have known that a hospital-acquired serious skin breakdown would occur.

64. Defendant Sullivan further breached the standard of care by delaying appropriate treatment of the decubitus ulcer once discovered and by failing to appropriately treat the ulcer once discovered.

65. The alleged professional negligence by the Defendant Sullivan is a deviation from the applicable standard of care of health care practitioners in the area to provide reasonable care and safe treatment to Judith Vozzella for her medical problems.

66. As a direct and proximate result of the Defendant Sullivan's negligent acts and omissions, Judith Vozzella developed an unstageable hospital-acquired decubitus ulcer of the buttocks bilaterally which contributed to and directly led to her progressive clinical decline, physically, mentally, spiritually emotionally, and ultimately her untimely death.

67. As the direct, proximate and foreseeable result of the negligence and breach of the standard of care aforesaid, Judith Vozzella sustained severe damages, endured unremitting pain and suffering, underwent relentless painful surgical procedures and invasive interventions, incurred substantial medical bills for treatment and died on June 19, 2009.

68 Wherefore, the Plaintiff's Estate claims damages for the mental and physical pain suffered by her in consequence of the injury, the reasonable expenses occasioned to her estate by the injury, the shortened duration of her life and the resulting loss of enjoyment of life caused by the injury,

and all other elements of damages that may be recovered under RSA 556:12.

## COUNT III – MEDICAL MALPRACTICE/WRONGFUL DEATH
## GEORGE K. LOOSER, II, PA

69. Plaintiff repeats and realleges every allegation in paragraphs 1-68 as though fully set forth herein.

70 As set forth above, Defendant Looser breached the standard of care by failing to protect Judith Vozzella from injury and death by allowing her complete immobilization with the omission of a plan of care for the prevention of the development of decubitus ulcers specific to the immobilized sedated post-operative patient.

71. Immobilization in this critical clinical setting created known risk of developing skin breakdown and ultimately was the cause of the hospital-acquired decubitus ulcer.

72. There is an absence of documentation covering the three-day post-operative period justifying the arterial line compared with the likely problem of skin breakdown.

73. As evidenced by the absence of documentation, neither Judith Vozzella nor her family were informed of the risks associated with immobilization in a clinical setting of severe peripheral vascular disease.

74. Given the severe nature of Judith Vozzella's vasculopathy and the duration of her immobilization Defendant Looser knew or should have known that a hospital-acquired serious skin breakdown would occur.

75. Defendant Looser further breached the standard of care by delaying appropriate treatment of the decubitus ulcer once discovered and by failing to appropriately treat the ulcer once discovered.

76. The alleged professional negligence by the Defendant Looser is a deviation from the applicable standard of care of health care practitioners in the area to provide reasonable care and safe treatment to Judith Vozzella for her medical problems.

77. As a direct and proximate result of the Defendant Looser's negligent acts and omissions,  Judith Vozzella developed an unstageable hospital-acquired decubitus ulcer of the buttocks bilaterally which contributed to

and directly led to her progressive clinical decline, physically, mentally, spiritually emotionally, and ultimately her untimely death.

78. As the direct, proximate and foreseeable result of the negligence and breach of the standard of care aforesaid, Judith Vozzella sustained severe damages, endured unremitting pain and suffering, underwent relentless painful surgical procedures and invasive interventions, incurred substantial medical bills for treatment and died on June 19, 2009.

79. Wherefore, the Plaintiff's Estate claims damages for the mental and physical pain suffered by her in consequence of the injury, the reasonable expenses occasioned to her estate by the injury, the shortened duration of her life and the resulting loss of enjoyment of life caused by the injury, and all other elements of damages that may be recovered under RSA 556:12

## COUNT IV – VICARIOUS LIABILITY
## PORTSMOUTH REGIONAL HOSPITAL

80. Plaintiff repeats and realleges every allegation in paragraphs 1-79 as though fully set forth herein.

81. At all relevant times, caregivers for Judith Vozzella during the course of events described above, were employees, agents or co-joint venturers of Defendant Portsmouth Regional Hospital, and acted within the scope of their employment, agency, or joint venture.

82. Therefore, Portsmouth Regional Hospital is vicariously liable for the negligent acts or omissions of such caregivers and the damages and injuries alleged herein.

## COUNT V – VICARIOUS LIABILITY
## APPLEDORE MEDICAL GROUP, INC.

83. Plaintiff repeats and realleges every allegation in paragraphs 1-82 as though fully set forth herein.

84. At all relevant times, Defendant Sullivan during the course of events described above, was an employee and/or agent of Defendant Appledore and acted within the scope of his employment or agency.

85. Therefore, Defendant Appledore is vicariously liable for the negligent acts or omissions of Defendant Sullivan and the damages and injuries alleged

herein.

## **COUNT VI – VICARIOUS LIABILITY**
## **COASTAL CARDIOTHORACIC AND VASCULAR ASSOCIATES**

86.	Plaintiff repeats and realleges every allegation in paragraphs 1-85 as though fully set forth herein.

87.	At all relevant times, Defendant Looser during the course of events described above, was an employee and/or agent of Defendant Coastal and acted within the scope of his employment or agency.

88.	Therefore, Defendant Coastal is vicariously liable for the negligent acts or omissions of Defendant Looser and damages and injuries alleged herein.

## **COUNT VII – LOSS OF CONSORTIUM**

89.	Plaintiff repeats and realleges every allegation in paragraphs 1-88 as though fully set forth herein.

90.	Robert Vozzella and Judith Vozzella were married on May 19, 1973 and he is the surviving spouse of Judith Vozzella.

91.	As a result of the negligence and breach aforesaid of all Defendants, Robert Vozzella, husband of Judith Vozzella, has been deprived of the care, comfort, society and companionship of his wife.

92.	Wherefore, the Plaintiff Robert Vozzella claims damages for the loss of his wife's consortium.

WHEREFORE, Robert Vozzella demands judgment against all Defendants in an amount sufficient to fully, fairly and adequately compensate him and the Estate for their injuries and losses plus costs and interest.

Dated at Dover, New Hampshire this 12th day of April, 2011.

                                          Respectfully submitted,

                                          Robert Vozzella
                                          By His Attorneys,
                                          Shaheen & Gordon, P.A.

- 13 -

*/S/ Christine M. Craig /S/*
Christine M. Craig, #12842
P.O. Box 977, 140 Washington Street
Dover, NH  03821-0977
(603) 749-5000

G. William Higbee, Esq.
McTeague Higbee
Lawyers. Allies. Advocates.
4 Union Park, PO Box 5000
Topsham ME  04086-5000